**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SALITA V. LATSON,**

                **Plaintiff,**

-vs-                                             **Case No. 6:05-cv-1435-Orl-19KRS**

**HARTFORD INSURANCE d/b/a THE**
**HARTFORD FINANCIAL SERVICES GROUP,**
**INC.**

                **Defendants.**

_____

**ORDER**

This case comes before the Court on the following:

1. Defendant Hartford Fire Insurance Company's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint and Incorporated Memorandum of Law. (Doc. No. 25, filed on December 30, 2005); and

2. Plaintiff Salita V. Latson's Response in Opposition to Defendant Hartford Fire Insurance Company's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint. (Doc. No. 29, filed on January 9, 2005).

**Background**

The following allegations are drawn from Plaintiff Salita Latson's Amended Complaint. (Doc. No. 23, filed on December 21, 2005).

Salita Latson ("Latson") was an employee of Hartford Insurance ("Hartford") and was the only African-American claims adjuster in her department. (*Id.* at ¶¶ 6, 7). Rica White ("White") was also

an employee at Hartford and supervised Latson beginning in May 2004.  (*Id.* at ¶¶ 7, 8).  Prior to White's supervision of Latson, she had been considered a very good employee and had never been reprimanded for her job performance.  (*Id.* at ¶ 8).

Latson alleges that the conversations and contacts initiated by White were offensive, discriminatory, harassing and had a racially biased tone.  (*Id.* at ¶ 9).  Latson contends that she was subjected to unwarranted reprimands, verbal abuse, excessive supervision, ostracization, and unnecessary discipline while Caucasian employees who did the same things Plaintiff had done were not.  (*Id.*)

In June 2004, Latson discovered she was pregnant and informed White of her pregnancy.  (*Id.* at ¶ 10).  After disclosing this information, White allegedly began to intimidate Latson and threatened her with termination.  (*Id.*)  Due to continued harassment and threats, Latson began to have problems with her pregnancy and was required to go on short term disability at the request of her physician.  (*Id.*)  After being on disability leave, White allegedly contacted Latson and informed her that her job was in jeopardy if she did not return to work.  (*Id.*)  Fearing she would lose her job, Latson returned to work and experienced a miscarriage.  (*Id.*)

Latson contends that she and other African-American female employees reported White's conduct to management, but no actions were taken by management to stop White's conduct.  (*Id.* at ¶¶ 11, 12).  Latson contends she was constructively discharged from her employment and that Defendant retaliated against her.  (*Id.* at ¶ 12).

On December 21, 2005, Plaintiff Salita Latson filed an Amended Complaint with four counts against Defendant Hartford Insurance.  (Doc. No. 23).  Count I is a claim under Title VII for racial harassment, hostile work environment, and retaliation.  Count II is a claim under Florida Statutes,

Section 760.01, for racial harassment, hostile work environment, and retaliation. Count III is a claim for intentional infliction of emotional distress, and Count IV is a claim for negligent retention, training and supervision.

On December 30, 2005, Defendant Hartford Fire Insurance filed a Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint. (Doc. No. 25). Defendant argues that Plaintiff has failed to state a claim for intentional infliction of emotional distress because the allegations of the Amended Complaint do not rise to the level of outrageousness under Florida law. Defendant also contends that Count IV of the Amended Complaint fails to state a claim for negligent retention, training, and supervision because, in the absence of the emotional distress claim, Plaintiff has failed to allege an independent underlying tort. On January 9, 2006, Plaintiff filed a response to Defendant's Motion to Dismiss arguing that she has alleged conduct that rises to the required level of outrageousness under Florida law.

This Order analyzes Defendant's Motion to Dismiss.

**Standard of Review**

For the purposes of a motion to dismiss, the Court must view the allegations of the complaint in the light most favorable to Plaintiff, consider the allegations of the complaint as true, and accept all reasonable inferences therefrom. *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1532, 1534 (11th Cir. 1994); *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Furthermore, the Court must limit its consideration to the pleadings and written instruments attached as exhibits thereto. *Fed R. Civ. P.* 10(c); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiff can prove no set of facts that would entitle Plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

**Analysis**

Defendant argues that the Court should dismiss the intentional infliction of emotional distress claim because Plaintiff's allegations fail to rise to the level of outrageousness required under Florida law.  In order to state a claim for intentional infliction of emotional distress, a plaintiff must allege that the wrongdoer's conduct was intentional or reckless, that the conduct was outrageous, that the conduct caused emotional distress, and that the emotional distress was severe.  *De La Campa v. Grifols America, Inc.*, 819 So. 2d 940 (3d DCA 2002).

In her Amended Complaint, Plaintiff alleges a claim for emotional distress against Defendant based on the conduct of White which included offensive, discriminatory, and harassing behavior, conversations with a racially biased tone, unwarranted reprimands and verbal abuse, excessive supervision, criticism, and intimidation, ostracization and demeaning actions in front of coworkers, and discipline for making telephone calls.[1]  Plaintiff alleges that she was subject to criticism for almost everything that she did while Caucasian employees were not and that White's harassing behavior forced Plaintiff to return to work while she was pregnant, causing her to have a miscarriage on the job. Plaintiff also alleges that Defendant failed to take any action to stop White, retaliated against Plaintiff, and permitted White to continue to mistreat her.  The issue before the Court is whether these allegations are sufficient to rise to the level of outrageousness under Florida law.

In *Metropolitan Life Insurance Company v. McCarson*, 467 So.2d 277, 279-80 (Fla. 1985), the Florida Supreme Court explained the applicable legal standard in determining whether conduct is

---

[1] A corporate employer can be held vicariously liable for an intentional act of its employee.  *Dieas v. Assoc. Loan Co.*, 99 So.2d 279, 280-81 (Fla. 1957) (an employer is liable for the intentional acts of an employee when an employee is acting within the scope of the employer's apparent authority, even if the employer did not permit or otherwise authorize the act, or it was not necessary or appropriate to serve the interest of the employer).

outrageous. Liability attaches only where the conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* The question of whether conduct rises to the level of outrageousness is a question for the trial court to determine as a matter of law. *De La Campa v. Grifols America, Inc.*, 819 So.2d 940, 943 (3d DCA 2002).

Defendant cites *Vance v. Southern Bell Tel. & Tel. Co.*, 983 F.2d 1573 (11th Cir. 1993), *Rollins v. McDonnell Douglas Corp.*, 907 F.Supp. 1514 (M.D. Fla. 1995), *Lay v. Roux Laboratories, Inc.*, 379 So.2d 451 (Fla. 1st DCA 1980), and *De La Campa v. Grifols America, Inc.*, 819 So.2d 940 (Fla. 3d DCA 2002), in support of its argument that Plaintiff's allegations are insufficient to demonstrate the outrageousness element of an intentional infliction of emotional distress claim. In *Vance*, the Eleventh Circuit found that a few instances of racially hostile misconduct did not rise to the level of extremity or outrageousness required to sustain the plaintiff's claim under Florida law.[2] *See* 983 F.2d at 1575 n.7.

In *Rollins* without enumerating the facts, the trial court in the Middle District of Florida found that the evidence did not rise to the level of conduct necessary to support a claim of intentional infliction of emotional distress under Florida law where the plaintiff claimed she was sexually harassed in violation of Title VII. 907 F.Supp. at 1516. In *Lay*, the First District Court of Appeal found that the trial court

---

[2] Specifically, the plaintiff claimed that the defendant violated section 1981 by hanging a noose over her work station after she started work, suspending her for an offense for which white employees were not suspended, subjecting her to a physical altercation with a white co-worker, sabotaging her work on a pay phone, refusing to treat her equally in disciplinary proceedings unless she dismissed pending charges of racial discrimination, refusing to purge stale disciplinary actions from her file, confining her to the supervision of a white woman who attacked her, transporting the plaintiff to the wrong hospital during her nervous breakdown, refusing the plaintiff's doctor's request to transfer the plaintiff to a different department, and constructively discharging plaintiff. *Vance*, 983 F.2d at 1574 n. 2.

properly dismissed the intentional infliction of emotional distress claim where the alleged conduct included threatening the plaintiff's job, using humiliating language, verbally attack the plaintiff, and calling the plaintiff a 'nigger' when an argument arose concerning a parking space.  379 So.2d at 452.  Finally, in *De La Campa*, the Third District Court of Appeal found that allegations of verbal abuse relating to the plaintiff's homosexuality, unwelcome acts, and disparate treatment based on the plaintiff's sexual orientation constituted offensive conduct but did not rise to the level of outrageousness required by law.  819 So.2d at 944.

Courts determining whether conduct rises to the level of being outrageousness under Florida law have permitted claims for intentional infliction of emotional distress in a work environment to go forward under certain circumstances.  For example in *Vernon v. Med Mgmt. Assocs. of Margate, Inc.*, 912 F.Supp. 1549, 1561 (S.D. Fla. 1996), the trial court in the Southern District of Florida found that the employee's alleged action of repeatedly touching, squeezing, fondling, hugging, blowing, and tickling the plaintiff along with the repetition of lewd and vulgar sexual remarks precluded the dismissal of plaintiff's complaint at the motion to dismiss stage.  Similarly, in *Stockett v. Tolin*, 791 F.Supp. 1536, 1556 (S.D. Fla. 1992), the trial court in the Southern District of Florida found that the plaintiff was entitled to compensatory damages for intentional infliction of emotional distress where the plaintiff was pinned against the wall, refused to allow to escape, and physically attacked on a weekly basis.  In *Johnson v. Thigpen*, 788 So.2d 410, 414 (Fla. 1st DCA 2001), the First District Court of Appeal found that the defendant's use of sexually explicit, demeaning, and vulgar language coupled with evidence of inappropriate, unwelcomed physical contact was outrageous conduct under Florida law.  Thus, Florida courts have found defendant employers liable for intentional infliction of emotional distress in an employment context.  *See, e.g., Howry v. Nisus, Inc.*, 910 F.Supp. 576, 580-81

(M.D. Fla. 1995) (employer's action of physically touching himself and employees in a suggestive manner, using obscene language, and commenting on sex organs was insufficient under Florida law to state a claim for intentional infliction of emotional distress); *see also Urquiola v. Linen Supermarket, Inc.*, 1995 WL 266582, at *4 (M.D. Fla. 1995) (plaintiff's allegations stated a claim for intentional infliction of emotional distress where plaintiff alleged numerous incidents of kissing, groping, attempted rape, and use of sexually explicit, demeaning, and vulgar language); *Vamper v. United Parcel Service, Inc.*, 14 F.Supp.2d 1301, 1306 (S.D. Fla. 1998) (explaining that the tort of intentional infliction of emotional distress is sparingly recognized by Florida courts and may proceed where there is relentless physical as well as verbal harassment) (internal citation omitted).

     In the instant case, there are allegations that White verbally harassed and ostracized Plaintiff on a regular basis, but such allegations are insufficient under the case law to meet the outrageousness element of a claim for intentional infliction of emotional distress.  While Plaintiff allegedly suffered a miscarriage as a result of White's verbal harassment, the case law focuses on the actions taken by the defendant employee rather than the plaintiff's reaction to verbal harassment in determining whether the conduct rises to the level of being outrageous.  The Court's independent research has not produced a case holding that a plaintiff's miscarriage as a result of verbal harassment is enough to meet the outrageousness element.  Furthermore, the Court does not find *Wilson v. Corinthian Colleges, Inc.*, No. 6:04cv896 (M.D. Fla., filed November 4, 2005), cited by Plaintiff to be persuasive because the trial court based its holding on issues of fact in the record at the summary judgment stage of the proceedings and did not conclusively make a finding as to the establishment of the outrageousness

element.[3]  Because Plaintiff has alleged only verbal harassment that, while regrettable, does not rise to the level of being outrageous as a matter of law, the Court grants Defendant's Motion to Dismiss as to Count III.

Upon dismissal of the claim for intentional infliction of emotional distress, Defendant argues that the negligent retention, training, and supervision claim must also be dismissed on the ground that Plaintiff has failed to allege an underlying tort which is recognized under common law.

To prevail on a claim of negligent supervision, retention, or training, the plaintiff must demonstrate that the defendant employer owes a duty to the plaintiff, the breach of which is the proximate cause of the plaintiff's injuries.  *See Watson v. City of Hialeah*, 552 So.2d 1146 (Fla. 3d DCA 1989).  Negligent retention occurs when, "during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further action such as investigating, discharge, or reassignment."  *Id.* at 438-39.  Negligent supervision occurs when an employer knows or has reason to know that it is necessary to control an employee to prevent the employee from intentionally harming others, has the ability to control his employee, and knows of the necessity and opportunity for exercising such control.  *See* RESTATEMENT (SECOND) OF TORTS § 317 (1965).[4]  Such claim involves a

---

[3] In *Wilson v. Corinthian Colleges, Inc.*, No. 6:04cv896 (M.D. Fla., filed November 4, 2005), another employee subjected the plaintiff, an African-American female, to foul language and racial slurs.  The trial court in the Middle District of Florida found that summary judgment in favor of either party on the intentional infliction of emotional distress claim was inappropriate due to issues of fact in the record.  (*Id.* at 8, 11-12).

[4] In *Mallory v. O'Neil*, 69 So.2d 313, 315 (Fla. 1954), the Florida Supreme Court adopted the First Restatement of Torts as a sound rule for negligent supervision claims.  Section 317 of the Restatement (Second) of Torts (1965) contains identical language to the First Restatement and provides that:

lack of diligence in supervising an employee. *See Pic N'Save Cent. Florida, Inc. v. Dept. of Bus. Regulation*, 601 So.2d 245, 255 (1st DCA 1992).

Plaintiff argues that she has alleged a claim for negligent retention because she complained of White's conduct and Defendant knew of White's harassing conduct and failed to take action. (Doc. No. 29, ¶ 7). However, Defendant is correct in noting that the underlying wrong committed by an employee in a negligent retention, supervision, or training claim "must be based on an injury resulting from a tort which is recognized under common law." *Scelta v. Delicatessen Support Services, Inc.*, 57 F.Supp.2d 1327, 1348 (M.D. Fla. 1999) (internal citations omitted). Florida law does not recognize a common law cause of action based on the negligent failure to maintain a workplace free of sexual harassment.

Here, Plaintiff must allege an underlying tort recognized under Florida law in order to recover for negligent hiring, training, and supervision. *See Castleberry*, 810 So.2d at 1030 (affirming the trial court's order dismissing the plaintiff's claims of negligent retention, supervision, and training because the plaintiff based her negligence claims on the defendant's actual or constructive knowledge that its employees were speaking and acting in a sexist, harassing, and retaliatory manner, that the defendant

---

> A master is under a duty to exercise reasonable care so as to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if
> (a) the servant
> (i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
> (ii) is using a chattel of the master, and
> (b) the master
> (i) knows or has reason to know that he has the ability to control his servant, and
> (ii) knows or should know of the necessity and opportunity for exercising such control.
> RESTATEMENT (SECOND) OF TORTS § 317 (1965).

retained those individuals in its employ, and that the defendant failed to properly train and supervise its employees).  Rather than alleging an independent underlying tort, Plaintiff in effect alleges that Defendant had a duty to maintain a work environment free of sexual harassment.

Because Count IV of the Amended Complaint is based on a common law claim of sexual harassment which is not recognized as an independent underlying tort under Florida law, the Court grants Defendant's Motion to dismiss as to Count IV.

### Conclusion

Based on the foregoing, the Court **GRANTS** Defendant Hartford Fire Insurance Company's Motion to Dismiss Counts III and IV of Plaintiff's Amended Complaint.  (Doc. No. 25).  Plaintiff has ten days from the date of this Order to file an amended complaint that comports with this Order.  If Plaintiff does not file an amended complaint, this case shall proceed on the remaining counts in the Amended Complaint at Docket Number 23.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on February __28____, 2006.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record